UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JANET RUTH MURRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 2:16-CV-316 |
| vs. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 16] for disposition and entry of a final judgment. Plaintiff's Supplemental Security Income ("SSI") application under the Social Security Act, Title XVI, was denied after a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 11 & 14] with a supporting memorandum [Docs. 12 & 15].

**I.     APPLICABLE LAW – STANDARD OF REVIEW**

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). A Court may not try the case *de novo*, resolve conflicts

in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the Court were to resolve factual issues differently, the Commissioner's decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). But, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007). The Court may consider any evidence in the record regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

The claimant has the burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. § 423(d)(1)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.     RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A.     Procedural History

Janet Murray ("Murray") filed DIB and SSI applications on November 15, 2013, alleging impairments she believed to be disabling. She later withdrew her DIB application and revised her alleged onset date to coincide with her application filing. (Doc. 9, Transcript p. 18) (reference to "Tr" and the page denote the administrative record). Murray was insured through March 31, 1995 (Tr. 33). Her claims were initially denied in January 2014 and upon reconsideration in May 2014. (Tr. 17). An ALJ conducted a hearing on October 16, 2015. (Tr. 33-45).

The ALJ followed the five-step analysis in evaluating the claims. The ALJ found Murray had severe medical impairments, but was not disabled. The findings were:

1. The claimant has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: degenerative disc disease; osteoarthritis; and obesity (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except no climbing ropes, ladders, or

3

scaffolds; can perform frequent posturals[1]; and avoid concentrated exposure to hazards;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born [in] . . . 1951 and was 62 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is an issue because the claimant does not have past relevant work (20 CFR Part 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)); and

10. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2013, through the date of this decision (20 CFR 416.920(g)).

(Tr. 21-25).[2] The Appeals Council denied Plaintiff's review request. (Tr. 1).

**B.    Evidence in the Record**

The decision summarizes the various evidence. (Tr. 22-24). The parties' briefs include overviews of the record evidence and history [Doc. 12, pp. 1-5; Doc. 15, pp. 2-8]. The sole medical records contained in the transcript are the reports of the consulting medical examiner and state agency reviewers and diagnostic imaging reports. There are no further medical records because Murray has never sought medical care. (Tr. 34).

**1.    Dr. Robert Blaine**

Dr. Robert Blaine examined Murray in February 2014. (Tr. 208). Murray alleged two

---

[1] The ALJ defined "posturals" separately from the finding. The term includes "activities such as climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling." (Tr. 22)

[2] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

conditions: back pain and arthritis. (*Id.*). With regard to back pain, Murray advised she was injured in 1979 and diagnosed with a herniated disc. She informed the examiner her back pain radiates to her right leg and causes numbness in her thigh and toes. (*Id.*). Murray also claimed she has arthritis, has pain in her neck, hands and knees, enlarged joints and poor grip. (*Id.*) Dr. Blaine's report focused on Murray's musculoskeletal and neurological systems:

> Musculoskeletal: Cervical spine: Flexion is normal, extension is 20 degrees, lateral rotation is 50 degrees to either side, and lateral flexion is 20 degrees to either side. Shoulders: Right shoulder; full range of motion except the internal rotation is 5 degrees. Left shoulder abduction is 130 degrees, anterior elevation is 140 degrees, internal rotation is 0 degrees, and external rotation is normal. Hips: Flexion is 90 degrees on the left and 70 degrees on the right, internal rotation is 0 degrees bilaterally, external rotation is normal bilaterally, abduction is normal bilaterally, and adduction is 10 degrees bilaterally. Knees: Extension 0 degrees bilaterally and flexion is 100 degrees bilaterally limited by obesity. Ankles: Dorsiflexion is 10 degrees bilaterally and plantarflexion is 10 degrees bilaterally. Thoracolumbar Spine: Full range of motion except the extension is 15 degrees. All other joints are normal.
>
> Neurological: Sensation is intact to light touch in all four extremities, but is decreased in the right foot. Strength, grip strength is 4/5 bilaterally. Flexor and extensor strength in both upper and lower extremities is 5/5. Straight leg raise produces low back pain at 10 degrees on the right and 80 degrees on the left. Deep tendon reflexes could not be elicited in any of her extremities. Station is normal. Gait is normal. Tandem walk shows moderate balance difficult. Single leg stand is normal bilaterally. Heel and toe walking are normal. She squats halfway into the floor.

(Tr. 209). He also noted Murray did not use an assistive device at the time of the exam and was able to get on and off the exam table without difficulty.

Dr. Blaine diagnosed back pain and arthritis. He opined Murray could stand or walk for two hours total in an eight-hour day with reasonable rest breaks, lift and carry up to 25 or 30 pounds infrequently and sit for eight hours with reasonable rest breaks. (Tr. 210).

**2.     Imaging Reports for Disability Claim**

On April 7, 2014, Murray underwent diagnostic imaging of her right hand, right knee, and lumbar spine for purposes of her disability claim. The reports for Murray's right hand and right

5

knee each showed "no acute osseous abnormality." (Tr. 212). Murray's lumbar spine imaging showed "mild to moderate spondylosis." (*Id.*)

3.  **State Agency Reviewers**

On March 20, 2014, State agency reviewer Dr. George Cross reviewed the medical evidence relating to Murray's claim and prepared a report. (Tr. 48-51). He found Murray had the medically determinable impairments of osteoarthritis and degenerative back disorders but felt they were not severe. He made no residual functional capacity ("RFC") determination. (Tr. 50).

On April 24, 2014, Dr. Charles Settle, also a State agency reviewer, provided a report. He had access to both Dr. Blaine's opinion and the imaging reports. (Tr. 56-61). Dr. Settle agreed with the medically determinable impairments found by Dr. Cross and further diagnosed obesity. With the exception of obesity, Dr. Settle found the impairments severe. He gave "light weight" to Dr. Blaine's report due to an absence of etiology regarding abnormalities identified in the examination and the resulting appearance of malingering. (Tr. 58). He ultimately found that Murray can occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand, walk or sit for six hours in an eight hour day, and frequently perform all posturals. (Tr. 58). He then assessed a medium RFC. (Tr. 57-58, 60).

On August 6, 2014, Dr. Karla Montague-Brown prepared a report for purposes of disability reconsideration. Her findings, limitations and RFC were comparable to those set forth in Dr. Settle's report. (Tr. 77-83).

**III. ANALYSIS**

Murray challenges the ALJ's evaluation of the report of the consulting medical examiner, Dr. Robert Blaine. She contends that the ALJ failed to make a fair evaluation of the report and therefore, substantial evidence does not support the benefit denial. In other words, she believes the ALJ erred in assigning little weight to the report. Murray next asserts that the ALJ erred by assigning great weight state agency reviewer opinions. Finally, Murray contends the ALJ did not

properly consider the reasons she did not obtain medical treatment.

A.  **The ALJ's treatment of Dr. Robert Blaine's opinion and State Agency Reviewers**

An ALJ must adhere to certain standards in assessing medical evidence in a disability claim. The standards are set forth in the regulations regarding weight to be given to opinions. The factors include the nature of the examining relationship, whether the provider is a treating physician, the opinion's supportability, the opinion's consistency with the record as a whole, any specialization of the physician and other factors brought to the Commissioner's attention that tend to support or contradict the opinion. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544; 20 C.F.R. §§ 404.1527(c) & 416.927(c). Further:

> In considering non-treating physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2–6) and 416.927(c)(2–6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(iii); *Jericol Mining, Inc. v. Napier,* 301 F.3d 703, 710 (6th Cir.2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue,* No. 3:10–CV–99, 2010 WL 5883653, at *6 (E.D.Tenn. Dec.17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

*Webster v. Colvin*, No. 3:14-CV-253, 2015 WL 4921633, at *9 (E.D. Tenn. Aug. 18, 2015).

Murray believes the ALJ erred in assigning little weight to Dr. Blaine's opinion because the ALJ commented during the hearing that Dr. Blaine "will find anything anywhere" and stated "[s]o, you know, I always dismiss – I don't look at his – to be honest with you, his limitations. I look at what he finds." (Tr. 34). Murray contends the ALJ had a biased or preconceived opinion

7

of this report and all of Dr. Blaine's reports. Murray further argues that Dr. Blaine's observations and examination support the use of various limitations he identified as opposed to the state reviewers' limitations.

In considering a claim of bias, the Court is constrained by the "presumption that policymakers with decisionmaking power exercise their power with honesty and integrity." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363–64 (6th Cir. 2004) (citing *Navistar Int'l Transportation Corp. v. United States Envt'l Protection Agency*, 941 F.2d 1339, 1360 (6th Cir. 1991)). "The burden of overcoming the presumption of impartiality rests on the party making the assertion [of bias], and the presumption can be overcome only with convincing evidence that a risk of actual bias of prejudgment is present." *Id.* (internal quotation marks and citations omitted). In other words, "any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.*

While the ALJ certainly made improvident remarks regarding the opinion of Dr. Blaine, the hearing transcript reflects that the ALJ nevertheless made a substantive investigation of Murray's claim during the hearing. He asked questions about her history, lack of treatment, activities and home life and gave her counsel the opportunity to present testimony on issues he felt were relevant. (Tr. 33-45). The ALJ articulated grounds for according little weight to Dr. Blaine's opinion. The ALJ found that Dr. Blaine's opinion was inconsistent with the minimal examination findings and diagnostic testing results and was based mainly on the claimant's subjective reports. He did not, however, completely reject Dr. Blaine's opinion. Rather, he agreed with Dr. Blaine that Murray could sit for eight hours. (Tr. 24). The ALJ's conclusion was based upon the exam testing and evidence as a whole, including testing that showed full range of motion and normal rotation or movement in many areas of her musculoskeletal system with limitations in some areas. (Tr. 209). Similarly, Murray completed a range of physical tests, such as heel and toe walking, with normal results, and had normal station and gait. (*Id.*).

At the time that Dr. Blaine issued his opinion, Murray had not yet undergone diagnostic imaging for her hand, knee and back. Dr. Blaine did not have the benefit of these results, which were either normal or reflected minimal degenerative changes, when he issued his opinion. The ALJ considered Dr. Blaine's opinion and the imaging results in conjunction with one another and appropriately found them inconsistent.

The ALJ's decision to assign little weight to Dr. Blaine's opinion is also supported by other evidence in the record. For example, the record includes evidence of Murray's failure to seek any medical care for her medical conditions. This lack of treatment casts doubt on Murray's subjective allegations that formed much of the basis for Dr. Blaine's opinion. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004)("A failure to [seek treatment] … may cast doubt on a claimant's assertions of disabling pain"); *see also Helm v. Comm'r of Soc. Sec.,* 405 F.App'x 997, 1001 (6th Cir. 2011) (limited treatment found inconsistent with finding of total disability).

The Court finds that Murray has not demonstrated the ALJ's remarks as to Dr. Blaine establish Dr. Blaine was bias against Murray. Rather, the ALJ gave a substantive explanation in his decision, and the record constitutes substantial evidence to support the weight he assigned to Dr. Blaine's opinion.

With regard to the State agency reviewers, Murray believes the great weight afforded to their opinions was misplaced because the reviewers had "the opinion that [Murray] was malingering during the consultative examination." [Doc. 12, p. 9]. The reviewers' reports do not reflect the opinion that Murray was, in fact, malingering. Rather, the reviewers simply noted that the lack of etiology explaining various abnormalities suggested malingering. It is appropriate, if not expected, that reviewers will identify complaints by a claimant that are inconsistent with the exams, normal imaging results, and the absence of treatment, as they did here. The ALJ primarily relied upon the consistency of these reviewers' opinions with Murray's lack of treatment for back pain and arthritis. (Tr. 24). Further, both reviewers had the benefit of the relatively normal April

2014 imaging results, along with Dr. Blaine's physical examination results, which support less constrained limitations than testified to by Murray. The ALJ appropriately considered and accorded great weight to the opinions of two of the State agency reviewers, Drs. Settle and Montague-Brown, with regard to Murray's RFC and postural limitations.[3] The Court finds substantial evidence supports the weight the ALJ accorded to the medical opinions in this case.

**B.     The ALJ's Consideration of Reasons Claimant Did Not Obtain Treatment**

Murray contends that the ALJ failed to properly consider the reasons she did not receive medical treatment in addressing her credibility. SSR 96–7p provides guidance relative to the failure to seek treatment:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996). The Sixth Circuit also provides guidance: "The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004). Regardless, "when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Id.*

Murray testified that she had never seen a doctor in her adult life. (Tr. 34). She last saw a doctor following an injury in 1979. (Tr. 37). The ALJ asked Murray why she never sought care. She explained that she did not have insurance or the money to do so. (Tr. 35). The ALJ

---

[3] Given the lack of discussion of Dr. Cross, his opinion was accorded no weight.

acknowledged this before noting various clinics and free resources exist that Murray could have utilized. When asked whether she had needed to see a doctor, Murray responded that she "probably did." Instead, she testified she simply "struggled through it." (*Id*.).

Murray's counsel also posed questions regarding her failure to seek care, including whether she investigated Project Access options. She responded that she talked to the group about utilizing "Obamacare" but that she was told she did not make enough money. (Tr. 36). The ALJ observed that although Murray lacks health insurance, she has not sought care from a hospital or emergency department, rural health clinic or other provider specializing in care for patients without insurance. The ALJ found the absence of the pursuit of care inconsistent with Murray's assertions that her back and leg pain are so severe that she is sometimes unable to walk and that her leg and back give out. (*Id*.). The ALJ relied on this evidence as a part of the basis for finding Murray's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible.

The Court finds the ALJ satisfied his duty under SSR 96-7p by investigating Murray's explanation for her failure to seek medical treatment and considering her responses, including her lack of insurance and limited financial means. However, the ALJ was not required to accept Murray's responses as sufficient grounds to excuse lack of treatment, particularly since there is no evidence to suggest free or low cost medical treatment options were wholly unavailable or that Murray investigated options beyond attempting to obtain health insurance through the Affordable Care Act, i.e. Obamacare. Murray also never asserted she could not afford an examination at any point in her adult life or following the onset date even if she lacked the ability to afford continuing treatment. Accordingly, the Court finds substantial evidence supports the ALJ's determinations as to Murray's failure to obtain medical treatment.

## IV. CONCLUSION

Based upon the foregoing, the Court finds substantial evidence exists to support the ALJ's decision. Accordingly, Plaintiff's motion for summary judgment [Doc. 11] is DENIED and the Commissioner's motion for summary judgment [Doc. 14] is GRANTED.

SO ORDERED:

s/Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE